## TEXAS & P. RY. CO. v. WEATHERLY.
### No. 4474.

Court of Civil Appeals of Texas.
Texarkana.

May 18, 1934.

Rehearing Denied June 7, 1934.

T. D. Gresham and R. S. Shapard, both of Dallas, and Bibb & Bibb, of Marshall, for plaintiff in error.

Jones & Jones and Percy Woodard, all of Marshall, for defendant in error.

LEVY, Justice.

The suit is by the defendant in error against the plaintiff in error for damages for injuries inflicted upon him by a special officer of the railroad company. The defendant in error, a man of twenty-six years of age, on May 30, 1932, at about 4:30 o'clock in the morning, came into the city of Marshall on a freight train, and after alighting from the train walked toward the depot. The electric lights were on in the depot at the time. A special officer of the railroad company at the time was standing near the depot.

According to the testimony of the defendant in error, stated briefly in substance, the special officer called to the defendant in error to come where he was standing. The defendant in error approached the special officer in obedience to the request, and asked him the question: "Where could I get a bed?" And the special officer said: "I do not know." That the special officer then asked: "Do you know who you are talking to?" And the defendant in error answered that he did not, and the special officer said: "You are talking to Step-and-a-half." That the defendant in error then turned to go away, when the special officer began to curse him, using abusive language. That the defendant in error was going toward the street with his back to the officer but turned to look to see where he was, and was then struck over the left eye with a gun in the hand of the officer. It was undisputed that the defendant in error did not have a gun or knife, and he testified that he did not and never thought of making a threatening move toward the special officer.

The testimony on the part of the plaintiff in error, stated briefly in substance, went to show that the defendant in error coming to the ticket office window at the depot looked in and then, seeing the special officer standing near him, asked the special officer what place that was. That special officer told the defendant in error the name of the city and then asked the defendant in error if he did not know it was against the law to ride freight trains without paying fare. That the special officer then told defendant in error, after informing him respecting directions requested, that he could not loaf there at the depot on the premises of the railroad company and he had better go on away and get out of town. That then defendant in error, who was within several feet of the officer, cursed the officer and suddenly wheeled around toward the officer with uplifted hand as if to strike him. That thereupon the special officer hit the defendant over the head with the front end of his pistol. That the two proceeded to the police station, where the defendant in error was left in charge of the

police; the special officer telling of the occurrence but filing no charges against the defendant in error. That the city policeman washed the wound on defendant in error's head and then took him to the Texas & Pacific Railway hospital, where his head was dressed and bandaged.

It was proven that the defendant in error was about twenty-five years of age when injured and had been engaged in carpenter work and common labor. He worked steadily, having worked practically all the time before his injury. It appears that before his injury the defendant in error had occasionally suffered from epileptic fits. The blow or lick on his head with the pistol, according to the evidence, aggravated that prior trouble and considerably increased the frequency of his epileptic troubles. The blow on the head with the pistol, according to some evidence, was severe, and according to some evidence it caused only a scalp wound. Since the injury, according to the evidence, the defendant in error has not been able to do the physical labor that he was accustomed to perform and to the extent that he had formerly done.

■ The case was submitted to the jury on special issues as follows:

"No. 1: Do you find from a preponderance of the evidence in this case that special agent of the defendant assaulted or abused the plaintiff on the 30th day of May, 1931? Answer: Yes.

"No. 2: Do you find from a preponderance of the evidence in this case that the injuries, if any, of which the plaintiff complains are the proximate result of his being struck by defendant's special officer on May 30, 1931? Answer: Yes.

"No. 3: (Requested by Plaintiff) Do you find from a preponderance of the evidence that plaintiff was suffering with epileptic fits, or convulsions, before his injury on May 30, 1931? Answer: Yes.

"No. 3: Do you find from a preponderance of the evidence in this case that the epileptic condition, if any, of which the plaintiff complains is the proximate result of his being struck by defendant's special officer? Answer: No.

"No. 4: Do you find from a preponderance of the evidence that the actions of the defendant's agent, inquired about in special issue No. 1, aggravated or made worse the existing epileptic or convulsive condition of plaintiff, if any? Answer: Yes.

"No. 5: Do you find from a preponderance of the evidence in this case that the condition of which plaintiff complains is due to causes other than his being struck by special officer of the defendant? Answer: Yes.

"No. 6: Do you find and believe from a preponderance of the evidence in this case that the condition of which the plaintiff complains is the proximate result of a disease with which plaintiff was afflicted prior to the occasion of his being struck by the defendant's special officer? Answer: Yes.

"No. 7: Do you find from a preponderance of the evidence in this case that the actions and conduct of the plaintiff toward special officer at the time of the alleged injury, under the facts and circumstances in evidence before you, was such as to justify him in the use of force to eject the plaintiff from the defendant's premises? Answer: No.

"No. 8: Do you find from a preponderance of the evidence in this case that the force used by special officer in attempting to eject the plaintiff from the defendant's premises was such force as was reasonably necessary under the facts and circumstances in evidence before you? Answer: No.

"No. 9: Do you find from a preponderance of the evidence in this case that the force used by special officer in attempting to eject the plaintiff from defendant's premises was made necessary by the actions and conduct of plaintiff at the time? Answer: No.

"No. 10: Do you find from the preponderance of the evidence in this case when special officer struck the plaintiff he did so in self-defense as that term is defined to you in this charge? Answer: No.

"No. 11: Do you find from a preponderance of the evidence in this case that the plaintiff by his actions and conduct in coming upon defendant's premises in the manner that the evidence shows he did come thereon and in conducting himself as you find he did conduct himself provoke the difficulty with special officer? Answer: No.

"No. 12: What amount of money do you find from a preponderance of the evidence, if paid now in cash, will fairly compensate the plaintiff for his injuries, if any? Let your answer to this question be in dollars and cents, if any amount you have found. Answer: Three Thousand seven hundred & Fifty Dollars, $3,750.00."

There is evidence to support the answers of the jury and they are here adopted as the facts of the case.

■ The propositions submitted on appeal, considered respecting subjects, predicate er-

ror on the definition of "assault" and "self defense" and in refusing to give the requested special charges. The points are well presented and argued in the brief and it is un--necessary to give an extended statement. It is believed the instructions and explanations given by the court are correct and applicable to the case. The jury were fully authorized to consider whether or not the special officer was provoked to strike and justified in doing so by the abusive language and conduct of the defendant in error.

The amount of damages awarded by the jury may not, it is concluded, in the special feature of the case, be held as excessive. In this character of tort recovery may be had not only for the physical injury but for mental pain and injury to feelings occasioned by humiliation or indignity. The jury, who must decide the amount, has a wide discretion in dealing with feelings.

The argument of counsel, as complained of, was not so outside of the realm of evidence in the case as to constitute reversible error. As qualified in the bill of exception the legal effect of the answers was not conveyed to the jury.

The complaint of misconduct on the part of jurors was carefully heard and considered by the trial judge, and it is concluded that his conclusion, as rightfully within his province in the facts, should not be held as not sustainable. Houston & T. C. R. Co. v. Gray, 105 Tex. 42, 143 S. W. 606.

The judgment is affirmed.